NOT DESIGNATED FOR PUBLICATION

No. 128,706

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER M. BROADNAX,
*Appellant*,

v.

DAN SCHNURR, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; DANIEL D. GILLIGAN, judge. Submitted without oral argument. Opinion filed October 24, 2025. Affirmed.

*Wendie C. Miller*, of Kechi, for appellant.

*Jon D. Graves*, of Hutchinson, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: Christopher M. Broadnax appeals the summary dismissal of his petition for habeas corpus relief from harsh prison treatment because of a strip search of his person by prison officials. He argues that the dismissal was erroneous because of several constitutional violations claimed in his petition. It appears that Broadnax failed to show the court that he had exhausted his administrative remedies before filing his petition. Our review of the record reveals that the summary dismissal of his petition was appropriate. Accordingly, we affirm.

1

*Broadnax was searched before his transfer to a different prison.*

Christopher Broadnax is an inmate in the custody of the Kansas Department of Corrections. He filed a petition for a writ of habeas corpus under K.S.A. 60-1501, alleging a strip search violated his due process rights. Because of this claimed rights deprivation, Broadnax sought broad relief:

- claims for declaratory relief
- injunctive relief
- compensatory relief in the amount of $100,000
- sentence relief
- restoration of his good time credit
- and the return of various property.

Broadnax was scheduled to be transferred from Lansing Correctional Facility to the Hutchinson Correctional Facility. At the time, Broadnax was on suicide watch and confined to the suicide room. On October 12, 2023—before he was transferred—Broadnax was strip searched by three correctional officers in the clinic's suicide room. The officers used a handheld camera to document the search. He told the officers that the use of the camera made him feel uncomfortable. Broadnax claims the officers told him they did not care how he felt about the camera or the search and threatened physical harm should Broadnax refuse to comply.

Broadnax asked the officers to remove the camera and one of the three officers because he felt uncomfortable and believed the camera and number of officers was illegal under the Prison Rape Elimination Act. The officers refused Broadnax's request, and he claims that they told him that he had to either strip-out or be hurt.

Broadnax felt he had no other option, so he began undressing and confessed to the officer that he did not want to be transferred because he would be living further from his family. He claimed that an officer told him, "'just go, nobody wants you here,'" and that Broadnax was weak and nobody liked him. As a result of the incident, Broadnax claimed that he was "very fearful for his safety, felt embarrassed, belittled & mentally & emotionally broken."

After he was transferred to Hutchinson Correctional Facility, Broadnax claims that he filed a grievance report with the Hutchinson prison staff. But the record on appeal only reveals one grievance form concerning the October 12, 2023, incident, which appears to have been filed on October 19, 2024. On the grievance form, Broadnax suggested that the only relief he sought was for the officer that insulted Broadnax to be fired.

The record also reveals some correspondence from the Secretary of Corrections, but because the date appears to be marked out, there is no way of knowing when the response occurred. In the correspondence, the Secretary stated that the agency investigated Broadnax's grievance, and after speaking to multiple Hutchinson Correctional Facility employees, the Secretary determined that the incident did not occur as alleged. The Secretary suggested that Broadnax may be talking about Lansing Correctional Facility and stated that cameras are often used in a way to protect the officer and the resident but not used in a way to further affect the dignity of the searched party.

Unsatisfied with this response, Broadnax filed a petition for habeas corpus under K.S.A. 60-1501. In his petition, Broadnax claimed that the strip search violated his Fourth, Eighth, Tenth, and Fourteenth Amendment rights, as well as his rights under various other statutes. Because of this deprivation of rights, Broadnax requested the various remedies we listed above.

3

Broadnax's habeas corpus petition was dismissed for several reasons. The district court found that Broadnax's requested relief was not supported by the claims in his petition. First, the court stated that Broadnax's requested monetary relief is not an available remedy through a K.S.A. 60-1501 petition, citing *McCarty v. Cline*, No. 122,877, 2020 WL 6935620 (Kan. App. 2020) (unpublished opinion). Next, the court held that Broadnax failed to provide anything showing his good time had been withheld or why his good time was forfeited.

Finally, the court found that there was no connection between Broadnax's requested relief and his alleged violation of rights. The alleged violation of rights involving a strip search is unconnected to the return of property. Therefore, the court found that none of Broadnax's requested relief is available through his K.S.A. 60-1501 petition, citing *Walling v. Riggin*, No. 112,052, 2015 WL 3875085 (Kan. App. 2015) (unpublished opinion) (for the proposition that if, on the face of a K.S.A. 60-1501 petition, it can be established that the petitioner is not entitled to relief, or no cause for granting a writ exists, then summary dismissal is proper). Accordingly, the court dismissed Broadnax's K.S.A. 60-1501 petition.

*We must focus on one issue.*

We must answer one question: Did the district court err in summarily dismissing Broadnax's petition?

Broadnax tries to resolve this issue by arguing that indeed he has exhausted his administrative remedies and detailing his efforts to file grievances with his unit team manager and appealing the response. He also argues that the strip search at Lansing Correctional Facility violated his due process rights, as well as his Fourth and Eighth Amendments rights. Broadnax argues that because prison officials did not have reasonable suspicion to strip search him, the search was unreasonable and violative of the

4

Fourth Amendment. He also claims that the search subjected him to cruel or unusual punishment, consisting of punishment that was grossly disproportionate to the severity of Broadnax's crime and thus violating his Eighth Amendment rights as well.

To properly answer this question we must follow well-established principles of habeas corpus law.

*Our legal guidance comes from several sources.*

Constitutional rights exist even behind bars. Inmates enjoy constitutional protection from cruel and unusual punishment under both the Eighth Amendment to the United States Constitution and section 9 of the Kansas Constitution Bill of Rights. *Darnell v. Simmons*, 30 Kan. App. 2d 778, 780, 48 P.3d 1278 (2002); see also *Jamerson v. Heimgartner*, 304 Kan. 678, 679, 372 P.3d 1236 (2016) (prisoner challenge to conditions of confinement).

Any prisoner in Kansas may petition under K.S.A. 60-1501 for a writ of habeas corpus in the county where they are confined, alleging that their conditions of confinement violate due process. *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). To obtain a writ of habeas corpus, the petitioner must allege either (1) shocking and intolerable conduct or (2) continuing mistreatment of a constitutional nature. *Johnson*, 289 Kan. at 648; *Merryfield v. State*, 44 Kan. App. 2d 817, Syl. ¶ 1, 241 P.3d 573 (2010). "[I]f it is apparent from the petition and attached exhibits that the petitioner is entitled to no relief, then no cause for granting a writ exists and the court must dismiss the petition." *Denney v. Norwood*, 315 Kan. 163, 173, 505 P.3d 730 (2022); see K.S.A. 60-1503(a). An appellate court exercises de novo review of a summary dismissal. *Denney*, 315 Kan. at 176.

Both federal and state statutes require prison inmates to exhaust administrative remedies before filing a civil claim against state actors and prison facilities. See K.S.A. 75-52,138 (an inmate must exhaust any administrative remedies established by the Secretary of Corrections before filing any civil action against the State, a political subdivision of the State, or a public official); 42 U.S.C. § 1997e(a) (no action can be brought challenging prison conditions under 42 U.S.C. § 1983 or other federal law until prisoner has exhausted administrative remedies); see also *Sperry v. McKune*, 305 Kan. 469, 482-83, 384 P.3d 1003 (2016).

For state law claims, K.S.A. 75-52,138 requires inmates to establish that they exhausted available administrative remedies in their original petition. The same pleading requirement, however, does not exist in the federal statute, so Kansas courts cannot require inmates to prove exhaustion of administrative remedies in a pleading for claims raised under 42 U.S.C. § 1983 or other federal law. *Sperry*, 305 Kan. at 482-83.

We will follow these principles while resolving this appeal.

*We find no attempt to pursue administrative remedies.*

Because the district court summarily dismissed Broadnax's K.S.A. 60-1501 petition, we have unlimited review of that dismissal. *Denney*, 315 Kan. at 175. Before a habeas corpus petition may be filed, Kansas inmates must exhaust their administrative remedies. For failure to establish that an inmate exhausted their administrative remedies, the district court must dismiss the petition. See K.S.A. 75-52,138; *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 19, 203 P.3d 1 (2008).

When reviewing whether summary dismissal was appropriate, the reviewing court "must accept all well-pled factual allegations as true." See *Denney*, 315 Kan. at 173. "But if it is apparent from the petition and attached exhibits that the petitioner is entitled to no

relief, then no cause for granting a writ exists and the court must dismiss the petition." 315 Kan. at 173.

To properly exhaust all administrative remedies, an inmate must follow the procedure laid out in the Kansas Department of Corrections' administrative regulations. See K.A.R. 44-15-101; K.A.R. 44-15-102. Those regulations first require the inmate to attempt informal resolution and problem solving at the unit team level. K.A.R. 44-15-101(d)(1); K.A.R. 44-15-102(a). If no response is received within 10 days or the response is not a satisfactory solution, the inmate may send the grievance report to the warden. K.A.R. 44-15-102(a)(2), (b). Inmates must attach a copy of each request form used to attempt problem resolution—in addition to other required information, including the action that the inmate wishes the warden to take to solve the problem. K.A.R. 44-15-102(b)(1)(C). If the inmate is not satisfied with the warden's response, the next step is appealing to the Secretary of Corrections within three days of receiving the warden's answer. K.A.R. 44-15-102(c)(1).

The record reveals reports and responses with either incorrect dates or, in the case of the Secretary of Corrections' response, the date was marked out. Therefore, it is difficult to determine whether the proper procedure for inmate grievances was taken. Further, there does not appear to be any appeal to or response from the warden—the required second step of grievance procedures. Broadnax claims that his Form 9 "was never returned and he refiled it again, three times, and then finally kept the receipt from that filing." Broadnax claims that he filed a grievance which was forwarded to the warden on January 16, 2024, and had not received any response despite speaking with correctional facility staff.

Broadnax further claims that he "cannot produce forms that went unanswered and were never returned to him by staff, but his letters and the documents attached to his petition referenced above show he exhausted the grievance process." But without the

7

correct dates on several documents, it is difficult to determine whether the proper grievance procedure was followed. Because Broadnax failed to prove that he exhausted his administrative remedies, summary dismissal was appropriate.

There is nothing in this record that shows an exhaustion of remedies.

*Additional reasons support summary dismissal of Broadnax's petition.*

Broadnax's petition alleged violations of the Fourth Amendment and Eighth Amendment based on the strip search. But the remedy for a Fourth Amendment violation—outside of a 42 U.S.C. § 1983 action—is the exclusionary rule which functions to prohibit evidence stemming from an unconstitutional search against the defendant at trial. See *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024). Broadnax does not allege that any evidence was found during the strip search. Therefore, no remedy may be granted under the Fourth Amendment.

Further, Broadnax has not argued that he was a risk to being subjected to another strip search. In fact, the strip search that allegedly violated his rights occurred at a different correctional facility. He no longer resides in that prison. Thus, no injunction directing the prison to cease its alleged unconstitutional strip searches would redress any of Broadnax's alleged harms. Thus, declarative or injunctive relief is not an applicable remedy. Broadnax claimed in his reply brief that if this court determines that the restraint was wrongful, then this court must release the person from the restraint or transfer custody "'to some other person rightfully entitled'" to impose the restraint. But as stated above, the alleged wrongful restraint occurred at a facility where Broadnax no longer resides. Therefore, this court cannot release Broadnax from restraint or transfer him as he has already been transferred from that facility.

And because the alleged violation occurred at Lansing Correctional Facility and not Hutchinson Correctional Facility—where Broadnax currently resides and is the county where his habeas petition was filed—the issue appears moot. See *State v. Phipps*, 320 Kan. 616, 617, 570 P.3d 1240 (2025) (mootness is a jurisdictional bar, requiring reviewing courts to dismiss moot appeals). Because Hutchinson Correctional Facility is not the facility that performed the alleged unconstitutional strip search, the conditions of Broadnax's imprisonment at that facility are not violative of Broadnax's due process rights.

In sum, because Broadnax's requested remedies are not available or are impractical because of his allegations, any opinion from this court on the constitutionality of the strip search would amount to an advisory opinion. See *Baker v. Hayden*, 313 Kan. 667, 672, 490 P.3d 1164 (2021).

Summary dismissal is approved.

Affirmed.